United States District Court
Southern District of Texas
**ENTERED**
July 11, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES OTIS HERRING, *et al.*, | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:21-cv-00260 |
| | § | |
| RENEWABLE ENERGY SYSTEMS | § | |
| AMERICAS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION/ORDER

Pending before me are a number of outstanding motions. PeopleReady, Inc. ("PeopleReady") and Renewable Energy Systems Americas, Inc. ("RES") (collectively, "Defendants") have each filed a motion for summary judgment. Dkts. 56, 58. Plaintiff Charles Otis Herring ("Herring") has filed a motion to strike summary judgment evidence (Dkt. 60), a request to supplant a witness affidavit (Dkt. 67), and a motion for leave to file a new response to the summary judgment motions (Dkt. 70). RES moves to strike and objects to certain summary judgment evidence submitted by Herring (Dkt. 64), and both defendants move to strike Herring's sur-replies to their summary judgment motions (Dkts. 72–73).

### BACKGROUND

PeopleReady is a temporary employment service. RES is a renewable energy company. PeopleReady and RES entered a temporary staffing agreement whereby PeopleReady would provide contract workers for construction of an RES solar farm. In September 2019, Herring, a black man, started work at this solar farm. Herring was initially assigned to the Tracking Crew's Elevation Team, where he and his fellow workers ensured that the torque tube assemblies were properly aligned and raised. When PeopleReady employee Justin Thompson ("Thompson") referred to Herring as an "old nigger," Herring complained to RES field supervisor

Pat Gallardo ("Gallardo")[1] and PeopleReady liaison officer Mo Avalos ("Avalos"). Dkt. 59-3 at 10. He was subsequently reassigned to work on the motor mount crew. In this new role, Herring was required to assist in lifting heavy steel tubes. On October 17, 2019, one of the steel tubes that Herring was attempting to lift fell on his shoulders, resulting in serious personal injuries. This lawsuit followed.

Herring and his wife, Pamela Gary Herring ("Ms. Herring"), representing themselves pro se, originally filed this lawsuit against RES and PeopleReady in Texas state district court. Plaintiffs' Original Petition asserts negligence and gross negligence causes of action arising out of the injury that Herring sustained while working at the solar farm.

RES timely removed this case to federal court on the basis of diversity jurisdiction. I later allowed Plaintiffs to file a Supplemental Complaint, adding a claim for racial discrimination under 42 U.S.C. § 1981. Defendants moved to dismiss the § 1981 claim, and I recommended that Defendants' motions be granted in part and denied in part. In particular, I held that Ms. Herring's § 1981 claim should be dismissed, and that Herring's § 1981 claim survive the pleading stage. Defendants now move for summary judgment on all of Plaintiffs' claims. Before I reach the merits though, I must address a host of evidentiary and briefing issues to determine what I will consider in analyzing Defendants' summary judgment motions.

### EVIDENTIARY/BRIEFING ISSUES

### A. HERRING'S MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE (DKT. 60)

Herring moves to strike summary judgment evidence that addresses "previous litigation efforts" by Herring in this district. Dkt. 60 at 2. RES first argues that "[i]t is unclear what specific evidence Plaintiffs seeks to strike, as the same is not specifically identified in Plaintiffs' Motion." Dkt. 65 at 1. RES knows good and

---

[1] RES states that the man identified by Herring as "Pat Guajardo" is actually named "Patrick Gallardo." Dkt. 58 at 11–12.

well the evidence to which Herring is referring because RES goes on to discuss said evidence throughout its response. *See id.* at 2 (discussing Dkt. 58 at 26 n.105, Dkt. 58-9). RES also highlights that "the facts cited in Note 105 are the same as those referenced in [PeopleReady's] Motion for Summary Judgment . . . to which [Herring has] lodged no objection," and that "the evidence presumably referred to by [Herring] will still be before the Court for consideration." *Id.* But Herring has objected to this evidence, and quite thoroughly. *See* Dkt. 83 at 10–11. (objecting to PeopleReady's exhibits D and I "on the grounds that they are not relevant" and "the prejudicial impact of their inclusion outweighs any probative value which they could ever possess"). I agree with Herring.

RES and PeopleReady do not seek to present evidence of Herring's other litigation efforts for permissible reasons, such as establishing issue or claim preclusion. Even if such evidence were permissible, it would, at best, be evidence for the trier of fact to weigh in assessing Herring's credibility. But in no way does Herring's familiarity with the litigation process or his prior claims in other cases demonstrate that Defendants are entitled to judgment as a matter of law at the summary judgment stage of this litigation. Accordingly, evidence of Herring's familiarity with the litigation process and proceedings in other cases he has instituted are wholly irrelevant to the merits of Defendants' summary judgment motions in this case. Thus, Herring's motion to strike (Dkt. 60) is **GRANTED**.

**B.  RES'S MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE (DKT. 64)**

### 1.  *Declaration of Jaylon Tolbert*

In support of his response to RES's motion for summary judgment, Herring filed a witness declaration by Jaylon Tolbert ("Tolbert"). *See* Dkt. 59-3 at 12–13. In the declaration, Tolbert swears under penalty of perjury that he was employed at the solar farm where Herring was injured from "September 2019 through December 2020" and "witnessed when [Herring] was injured" on October 17, 2019. *Id.* at 12. RES moves to strike this declaration as fraudulent. *See* Dkt. 64 at 4–7. In doing so, RES has conclusively demonstrated that Tolbert did not begin work at

the solar farm where Herring was injured until December 2019, nearly two months *after* Herring's injury. *See* Dkt. 66-1 at 6. Given this timeline, Herring now admits that "Mr. Tolbert did not have personal knowledge of the facts to which he attests." Dkt. 74 at 1. Herring requests "to opportunely withdraw Mr. Tolbert's prior declaration." *Id.* I understand Herring's desire for Tolbert's declaration to be "nullified" (Dkt. 67 at 2), but I cannot and will not overlook perjury. *See Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. Unit B 1980) ("One who subscribes to a false statement under penalty of perjury pursuant to [28 U.S.C. § 1746] may be charged with perjury under [18 U.S.C. § 1621], just as if the statement were made under oath."). Accordingly, RES's motion to strike the perjurious declaration of Jaylon Tolbert (Dkt. 64) is **GRANTED**.

### 2.   *Herring's Affidavit*

Herring swore out an affidavit in support of his response in opposition to RES's motion for summary judgment. *See* Dkt. 59-3 at 10–11. RES moves to strike portions of this affidavit, arguing that it "includes conclusory statements, legal and medical conclusions, speculation and hearsay." Dkt. 64 at 2.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). "The substance of an affidavit must demonstrate the affiant has personal knowledge of the facts contained therein." *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 846 (S.D. Tex. 2011). "[C]onclusory assertions cannot be used in an affidavit on summary judgment." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). "If the affidavit fails to meet any of the procedural requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit." *Wojciechowski*, 763 F. Supp. 2d at 846. "The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will

consider the admissible portions in determining whether to grant or deny the motion." *Lee v. Nat'l Life Assurance Co. of Can.*, 632 F.2d 524, 529 (5th Cir. 1980).

The following table summarizes my rulings on each of the statements in Herring's affidavit that RES challenges:

| CHALLENGED STATEMENT | RULING |
|---|---|
| ¶3 – "I was injured as a result of the gross negligence of Defendant People Ready, Inc. while working at the WAGYU Solar Installation Facility in Damon, Texas on October 17, 2019." | **SUSTAINED**. This is an impermissible conclusory assertion. *See Salas*, 980 F.2d at 305. |
| ¶4 – "I maintain that were it not for the discriminatory policies, practices, and procedures of Defendant People Ready's employees, I would not have suffered my injuries which consisted of a ruptured inguinal column, and a herniated bladder." | **SUSTAINED**. This is an impermissible conclusory assertion. *See id.* |
| ¶4 "As a direct result of this injury, I have suffered additional hernia which derived from the initial injury. As a result thereon, I shall endure long-term disability, pain, discomfort, loss of sexual function, and loss of consortium as it relates to my injuries[.]" | **SUSTAINED**. This is an impermissible conclusory assertion. *See id.* Additionally, Herring is not qualified as a medical expert. *See* FED. R. EVID. 702. |
| ¶5 – "I allege that were it not for the discriminatory policies, practices, and procedures of Defendant People Ready, Inc.'s employees, which allowed a white supervisor named Justin Thompson to harass, intimidate, belittle and to refer to me as an 'old nigger', I would have continued to work for said company." | **SUSTAINED** as to the impermissible conclusory assertion that Herring would have continued his employment but for PeopleReady's actions. *See Salas*, 980 F.2d at 305.<br><br>**OVERRULED** to the extent Herring states that Thompson referred to him as an "old nigger" and that Herring perceived that language as harassing, intimidating, or belittling—such facts are clearly within Herring's personal |

| | knowledge.[2] |
|---|---|
| ¶5 - "Furthermore, I was assigned a more dangerous position working on the motor mount crew when I complained to RES field supervisor Pat [Gallardo] and People Ready liaison officer Mo Avalos about my supervisor." | **SUSTAINED** as to the impermissible conclusory assertion that Herring's assignment to the motor mount crew was a result of his complaining to Gallardo and Avalos. *See Salas*, 980 F.2d at 305.<br><br>**OVERRULED** to the extent Herring is stating that he complained to Gallardo and Avalos about Thompson's conduct. Such facts are clearly within Herring's personal knowledge. |
| ¶5 – "I allege that no corrective action was taken to address Justin Thompson's harassment, but rather, I was placed on a more dangerous work assignment, given a daily quota of eighty-five (85) units to install, or required to meet, and was not given the requisite personal protective equipment in which to work this more dangerous position." | **SUSTAINED** to the extent Herring claims that no corrective action was taken to address Thompson's harassment, because the affidavit does not demonstrate how Herring has personal knowledge of such a fact. *See Wojciechowski*, 763 F. Supp. 2d at 846.<br><br>**OVERRULED** to the extent Herring is stating his daily quota and lack of personal protective equipment. Such facts are clearly within Herring's personal knowledge. |
| ¶6 – "I allege that when I attempted to report the fact that I was being required to lift more than I had previously agreed to, during the orientation process, the liaison officer for People Ready, Mo Avalos stated that he would call corporate office to report the matter. No corrective measures were ever taken." | **SUSTAINED** to the extent Herring claims that no corrective measures were taken, because the affidavit does not demonstrate how Herring has personal knowledge of such a fact. *See Wojciechowski*, 763 F. Supp. 2d at 846.<br><br>**OVERRULED** to the extent Herring is stating that Avalos told him he would "call corporate." This testimony |

---

[2] RES contends—without citation to any legal authority—that "I allege" or "I maintain" statements are not statements of fact. *See* Dkt. 64 at 8–9. This is silly. Herring executed this affidavit under oath.

| | is clearly within Herring's personal knowledge. |
|---|---|
| ¶7 – "I maintain that I have several witnesses who may attest to the strenuous working conditions on the job, and the highly discriminatory practices utilized by Defendant RES Americas, Inc. in terms of determining which employees received less physically demanding work, or promotion consideration versus which ones were fired for feigned violations of policy." | **SUSTAINED**. *See infra* at 17. |
| ¶8 – "I allege that the determination made by Defendant's own expert witness, Dr. Michael Dooer, indicated that my secondary hernia were [sic] derivative of my initial injuries and that I should have only been released to work with extensive limitations imposed upon my work detail." | **SUSTAINED**. This is an impermissible conclusory assertion. *See Salas*, 980 F.2d at 305. Additionally, Herring is not qualified as a medical expert. *See* FED. R. EVID. 702. |
| ¶10 – "I maintain that I shall suffer long-term disability as it relates to this matter." | **SUSTAINED**. This is an impermissible conclusory assertion. *See Salas*, 980 F.2d at 305. Additionally, Herring is not qualified as a medical expert. *See* FED. R. EVID. 702. |

## C.   HERRING'S REQUEST TO SUPPLANT THE DECLARATION OF JAYLON TOLBERT (DKT. 67)

Herring asks to supplant Tolbert's perjurious declaration with a new one. *See* Dkt. 67; Dkt. 68-1 at 4–5. I need not address the laundry list of reasons that RES and PeopleReady provide in opposition to Herring's request. The new declaration that Herring seeks to provide from Tolbert pertains exclusively to events that post-date Herring's injury and his employment with PeopleReady and RES. The new declaration has nothing to do with Herring's claims; it is simply irrelevant. Herring's request to supplant Tolbert's declaration (Dkt. 67) is **DENIED**.

**D.**     **HERRING'S MOTION FOR LEAVE TO AMEND (DKT. 70)**

Herring has filed a Motion Seeking Leave to Amend His Original Answer to Defendant RES Americas, Inc.'s Motion for Summary Judgment. Dkt. 70. No amended answer or response was attached to this three-page document, but on the same day this motion was filed, the clerk's office docketed an Amended Response in Opposition to Defendant People Ready Inc.'s Motion for Summary Judgment. *See* Dkt. 71. I recently informed the parties that "I assume that the title of Herring's motion (*see* Dkt. 70) is a typo because his amended response is clearly directed toward PeopleReady, not RES." Dkt. 84 at 1. I gave Herring the opportunity to correct this assumption and he did not. RES and PeopleReady both advance valid arguments as to why no amended response or sur-reply should be permitted. Nevertheless, I will permit Herring to advance these arguments so he can be assured that this matter has been decided on the merits. Accordingly, Herring's request to amend his response to PeopleReady's motion for summary judgment (Dkt. 70) is **GRANTED**.

**E.**     **DEFENDANTS' MOTIONS TO STRIKE HERRING'S SUR-REPLIES (DKTS. 72, 73)**

Defendants move to strike Herring's sur-replies to their motions for summary judgment. It is true that sur-replies are heavily disfavored, including by me. But at this point in the litigation, it hopefully comes as a surprise to no one that I like to decide the issues on their merits. For the reasons I discuss below, Defendants are entitled to summary judgment on Plaintiffs' negligence and gross negligence claims *even if* I consider Herring's sur-replies and the evidence attached to those sur-replies.[3] Accordingly, Defendants' motions to strike Herring's sur-replies (Dkts. 72, 73) are **DENIED**.

---

[3] I do not consider the new Tolbert declaration because I deny Herring's request to supplant Tolbert's earlier, perjurious declaration.

## F.   HERRING'S REMAINING EVIDENTIARY OBJECTIONS

I must address one final matter before turning to the merits of this case. Herring lodges a blanket objection against all of RES's exhibits because RES's motion for summary judgment "does not contain a proper Appendix, with page numbers, exhibit numbers, or alphabetized designations of each exhibit so that they may be located or identified within the record as required by Rule 7(B)(3) of the local rules of this court." Dkt. 59 at 6. As to PeopleReady, Herring objects that "there are no page numbers listed on the right hand tab" of PeopleReady's appendix. Dkt. 83 at 10. These are not valid evidentiary objections. They are simply procedural "gotchas." Herring has benefitted greatly from my refusal to "play procedural 'gotchas'" in this litigation. Dkt. 44 at 1 n.1. He should not expect me to start now. Even if the failure to comply with a local filing rule were a valid basis to discount a party's summary judgment evidence—and to be clear, it is not—it still would not matter because RES and Herring substantially complied with this court's local rules. RES provided a table of contents for its exhibits in Section V to its motion for summary judgment. *See* Dkt. 58 at 7–8. Moreover, the rule that Herring cites regarding tabbing appendices to the right applies only to "courtesy copies of appendices or those filed conventionally (i.e. *not electronically*)." Dkt. 83 at 16 (emphasis added). Both RES and PeopleReady filed electronically, so this rule does not apply to them. Accordingly, Herring's blanket procedural objections to the entirety of RES and PeopleReady's summary judgment exhibits are **OVERRULED**.

## MOTIONS FOR SUMMARY JUDGMENT

### A.   SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material when they "might affect the outcome of the suit," and disputes are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Defendants initially bear the burden of demonstrating that there is no genuine dispute of material fact, and they carry that burden if they can demonstrate that Plaintiffs have failed to prove "an essential element of [their] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If Defendants meet their burden, Plaintiffs "must point to specific facts showing that there is a genuine dispute for trial." *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022) (quotation omitted). I construe all the evidence and make all reasonable inferences in the light most favorable to Herring. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## B.   PLAINTIFFS' NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS

Defendants argue that Plaintiffs' negligence and gross negligence claims against them are barred by the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA"). That provision states that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage." TEX. LABOR CODE ANN. § 408.001(a). The TWCA further provides that "if a temporary employment service elects to obtain workers' compensation insurance, the client of the temporary employment service and the temporary employment service are subject to Section[] . . . 408.001." *Id.* § 93.004(b). It is undisputed that PeopleReady is a temporary employment service; that RES was its client; that PeopleReady elected to carry workers' compensation insurance coverage; and that Herring sought and received benefits under that insurance. Accordingly, both PeopleReady and RES are entitled to assert the exclusive remedy provision as a bar to Herring's claims. That ought to be the end of the discussion. Nevertheless, Herring advances a number of arguments as to why he believes PeopleReady and RES are not entitled to the exclusive remedy.

First, Herring argues that Defendants are not entitled to the exclusive remedy because PeopleReady's "Insurance Carrier did not comply with the provisions of the TWCA." Dkt. 83 at 7. I will assume for the sake of argument that

this is true, but it has no bearing on whether Defendants are entitled to the exclusive remedy. PeopleReady's insurance carrier is not a party to this case, and this is not an appeal pursuant to the TWCA's dispute resolution process. All that matters for the purpose of determining whether Defendants are entitled to the exclusive remedy is whether Herring was "covered by workers' compensation insurance coverage." TEX. LABOR CODE ANN. § 408.001(a). Herring cannot dispute that he was covered by workers' compensation insurance because he admits that he "receive[d] workers' compensation benefits." Dkt. 58-7 at 152; *see Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them.").

Nevertheless, in his amended summary judgment response, Herring argues that PeopleReady "has presented no evidence to demonstrate that it had purchased Workmen's Compensation Insurance independently, but was relying upon its relationship with TrueBlue Inc. as the subsidiary of the [arguably] insured company True Blue." Dkt. 71 at 6 (alteration in original). This argument fails for several reasons, but I will start with the most obvious: by its plain language, the TWCA requires only that PeopleReady "maintain[ed] a policy of workers' compensation insurance," not that it *purchased* workers' compensation insurance. TEX. LABOR CODE ANN. § 93.004(a). The declaration of Sylvia Rey Flores, a Senior Resolution Manager for Gallagher Bassett, Inc., establishes that PeopleReady is an additional named insured on Policy No. WC 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, which "provided workers' compensation and employer's liability coverage" in Texas during the time of Herring's injury. Dkt. 57-2 at 2. This affidavit is "sufficient evidence . . . to demonstrate subscriber status under the Act." *Warnke v. Nabors Drilling USA, L.P.*, 358 S.W.3d 338, 344 (Tex. App.—Houston [1st Dist.] 2011, no pet.). That PeopleReady maintained workers' compensation insurance as an additional named insured on a policy that its parent company purchased, rather than purchasing the insurance itself, does not change the fact that PeopleReady

maintained workers' compensation insurance and that Herring was covered by that insurance, which is all the exclusive remedy provision requires. Moreover, Herring "does not contest [PeopleReady's] recitations regarding . . . [its] enrollment in Workers Comp. insurance." Dkt. 83 at 17. Accordingly, there is no genuine dispute that PeopleReady maintained workers' compensation insurance; that Herring received the benefits of that insurance because he was covered by it; and that PeopleReady—and RES, as PeopleReady's client—are entitled to the exclusive remedy.

Herring next argues that because he was a temporary worker, the exclusive remedy extended to professional employer organizations who obtain workers' compensation coverage does not apply. *See* Dkt. 71 at 6 (citing TEX. LABOR CODE ANN. § 91.001(14)). Herring is correct that temporary workers are excluded from the definition of "professional employers services" under Chapter 91 of the Texas Labor Code (the "Professional Employer Organizations Act"). And Herring is also correct that the exclusive remedy is not available to a professional employer service or its client when the employee is a temporary worker. But none of these arguments are relevant to this dispute. As Herring himself has admitted, he "was a temporary worker." *Id.* Temporary workers fall under Chapter 93 of the Texas Labor Code, not Chapter 91. Under Chapter 93, when a temporary employment service like PeopleReady "elects to obtain workers' compensation insurance, the client of the temporary employment service and the temporary employment service are subject to Section[] 408.001." TEX. LABOR CODE ANN. § 93.004(b). As we have already established, PeopleReady obtained workers' compensation insurance.

Thirdly, Herring argues that the exclusive remedy does not apply to PeopleReady because his claims are subject to the intentional injury exception. *See* Dkt. 83 at 7. PeopleReady counters that Herring has not raised a claim of intentional injury before and cannot do so for the first time in his response to a motion for summary judgment. It is true that Herring did not raise a claim of intentional injury in either his Original Petition or his Supplemental Complaint. It

is also true that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). These two points dispose of Herring's argument. But I will go one step further and explain why, even if Herring could raise an intentional injury claim at this late juncture in the case, he has not done so.[4]

The Texas Supreme Court has held "that the intentional failure to furnish a safe place to work does not rise to the level of intentional injury except when the employer believes his conduct is substantially certain to cause the injury." *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 407 (Tex. 1985). Herring has not alleged intentional conduct under this standard. Herring complains about the behavior of Gallardo, Avalos, and Thompson. But none of these men were the ones lifting the steel tube with Herring when he was injured. Herring was working with "his two normal co-workers named Charles Felder [("Felder")], and Roy Sandoval [("Sandoval")]." Dkt. 36 at 6. Yet, Herring makes no allegations that there was a specific known risk to him that did not apply to Felder or Sandoval. Nor does Herring allege that either Felder or Sandoval intentionally caused or contributed to his injury. This is important because Herring was lifting the tube *with Felder*.

The Texas Supreme Court has held "that for the intentional-tort exception to the exclusive remedy to apply, the employer must believe that its actions are substantially certain to result in a particular injury to a particular employee, not merely highly likely to increase overall risks to employees in the workplace." *Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 130 (Tex. 2020). Herring does not explain why PeopleReady should have believed that Herring, and only Herring, would be injured when Herring acknowledges that another worker of his same "stature" was lifting the tube with him. Dkt. 36 at 6. Moreover, Herring asserts that at least one worker could "deadlift a torque tube shaft by himself," undercutting

---

[4] For whatever reason, Herring does not advance this argument as to RES. But even if he did, the analysis would be the same and the claim would fail.

his argument that the work was inherently dangerous. *Id.* at 5. Herring simply has not alleged facts suggesting that PeopleReady believed that Herring's transfer to the motor mount crew was "substantially certain" to result in his injuries.

Lastly, Herring asks whether § 401.022 of the TWCA creates an exception to the exclusive remedy provision. It does not. Section 401.022 provides that the TWCA "may not be applied to discriminate because of race, sex, national origin, or religion." Tex. Labor Code Ann. § 401.022(a). By its plain language, Section 401.022 has no impact on the exclusive remedy provision. Herring has not cited any legal authority suggesting otherwise, and I have not been able to locate any. Furthermore, reading the provision in full assures me that this statutory provision is meant to prohibit discrimination in the evaluation of workers' compensation claims. *See id.* § 401.022(b) ("This section does not prohibit consideration of an anatomical difference in application of the impairment guidelines under Chapter 408 in rating an injury or a disease such as, but not limited to, breast cancer or an inguinal hernia. If an impairment rating assigns different values to the same injury for males and females, the higher value shall be applied."). For all these reasons, Plaintiffs' negligence and gross negligence claims are barred by the exclusive remedy provision of the TWCA.

## C.   HERRING'S § 1981 CLAIM

To establish a claim for relief under § 1981, Herring must "show that (1) he is a member of a racial minority; (2) the defendant[s] had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, such as the making and enforcing of a contract." *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931 (5th Cir. 2021). Defendants do not dispute that Herring is a member of a racial minority or that the alleged discrimination concerns an enumerated activity. Rather, Defendants contend that Herring cannot establish the second element—an intent to discriminate. There are three possible claims under § 1981: discrimination, retaliation, and hostile work environment. *See West v. Honeywell Int'l Inc.*, 558 F.

Supp. 3d 369, 377–83 (S.D. Tex. 2021) (addressing all three types of claims under § 1981).  Before I analyze whether Herring can establish discriminatory intent through any of these avenues, however, I must address a procedural matter.

PeopleReady argues that I have "observed" that "Herring's potentially colorable allegations of intentional discrimination concern retaliation." Dkt. 56 at 18. Not so. My Memorandum and Recommendation on Defendants' Motions to Dismiss never mentions the word "retaliation." *See* Dkt. 44. Nor does it mention the phrase "hostile work environment." *See id.* By PeopleReady's logic, Herring "did not cognizably plead [a hostile work environment]" any more than he pleaded retaliation. Dkt. 61 at 25. Admittedly, Herring "does not do a great job explaining the conduct allegedly demonstrating a discriminatory intent." Dkt. 44 at 6. What matters, though, is that Herring has clearly stated a claim for relief under § 1981. If that claim is to survive summary judgment, Herring must establish that each defendant "had an intent to discriminate on the basis of race." *Perry*, 990 F.3d at 931. There are a number of ways that Herring can establish discriminatory intent, and Defendants are wise to have addressed each of them in their motions for summary judgment. I will now consider each in turn.

### 1. *Herring Cannot Establish Discrimination or Retaliation Because He Did Not Suffer an Adverse Employment Action.*

To establish a claim of discrimination under § 1981, Herring must demonstrate that: (1) he "is a member of a protected class"; (2) he "was otherwise qualified for the position"; (3) he "suffered an adverse employment action"; and (4) "the action took place under conditions establishing an inference of discrimination." *Matthews v. Int'l House of Pancakes, Inc.*, 597 F. Supp. 2d 663, 675 (E.D. La. 2009). To establish a claim of retaliation under § 1981, Herring must prove that: (1) "he engaged in a protected activity"; (2) he suffered an adverse employment action; and (3) "a causal link exists between the protected activity and the adverse employment action." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436–37 (5th Cir. 2022). Both Defendants argue that Herring cannot

establish discrimination or retaliation because he did not suffer an adverse employment action.

An adverse employment action is one that affects "job duties, compensation, or benefits." *Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1046 (5th Cir. 2023) (quotation omitted). Herring claims that his transfer from the tracking crew to the motor mount crew constituted an adverse employment action. *See* Dkt. 59-3 at 10 ("Furthermore, I was assigned a more dangerous position working on the motor mount crew when I complained [about Justin Thompson's actions]."). I will assume, without deciding, that transfer to a more dangerous position may constitute an adverse employment action. But even so, Herring has not pointed to any evidence demonstrating that work on the motor mount crew was actually more dangerous than work on the tracking crew.

Simply saying that the position was "more dangerous" is not sufficient. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("[T]he plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint." (quotations omitted)). Nor is it sufficient for Herring to say that he "was not given the requisite personal protective equipment in which to work this more dangerous position." Dkt. 59-3 at 11. Herring does not specify what equipment he was not provided and why that equipment was required. In his Supplemental Complaint, Herring states that he was not given "a hernia belt, or any type of hydraulic lift equipment to assist him in lifting." Dkt. 36 at 6. But this is not competent summary judgment evidence because the Supplemental Complaint is unverified. *See Dogan*, 31 F.3d at 346 ("[B]ecause [the complaint] is unverified, it does not constitute competent summary judgment evidence."). Even if it were competent summary judgment evidence, Herring does not offer evidence showing why or whether a hernia belt or hydraulic lift equipment is actually required; nor does Herring offer evidence that such equipment was regularly provided to other employees but not to him. Without more, Herring has not offered

enough evidence to establish that his transfer to the motor mount crew was an adverse employment action.

In his affidavit, Herring states:

> I maintain that I have several witness[es] who may attest to the strenuous working conditions on the job, and the highly discriminatory practices utilized by Defendant RES Americas, Inc. in terms of determining which employees received less physically demanding work, or promotion consideration versus which ones were fired for feigned violations of policy.
>
> . . . .
>
> I aver that the reason that I have not obtained witness affidavits from my witnesses is due to the fact that Defendants had requested the opportunity to depose my witnesses, and I did not want to interfere with their discovery.

Dkt. 59-3 at 11. Discovery is, literally, the time to discover evidence—to disclose witnesses and obtain affidavits or deposition testimony from them. This is why Rule 26 requires initial disclosures. *See* FED. R. CIV. P. 26(a)(1). On summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." *See id.* Rule 56(c)(1). Accordingly, Herring's sworn statement that he has witnesses to support his claims is simply insufficient at summary judgment. Accordingly, Herring cannot establish the discriminatory intent required to prevail on a § 1981 claim through either discrimination or retaliation.

### 2. There Is a Genuine Issue of Material Fact Concerning Herring's Hostile Work Environment Claim.

To survive summary judgment on a hostile work environment claim under § 1981, Herring must show that "(1) he is a member of a protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about

the harassment and failed to take prompt remedial action." *Wantou*, 23 F.4th at 433 (quotation omitted). Defendants contest only the fourth and fifth elements.

> **(a)    There is a genuine issue of material fact that the harassment Herring suffered affected a term, condition, or privilege of employment (Element 4).**

Regarding the fourth element of a hostile work environment claim under § 1981, the Fifth Circuit has instructed:

> Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (cleaned up).

Herring testified that Justin Thompson, "the lead worker that they had assigned over [Herring's] crew was calling [Herring] a nigger." Dkt. 58-7 at 138; *see also id.* (Herring testified that Thompson "was referring to [Herring] as an old nigger. That old nigger. Come here, old nigger."). Herring testified that he found this language offensive whether it was being uttered by Thompson or "some of the young Black workers." *Id.* at 177; *see also id.* at 67 ("And if you don't think that a supervisor referring [to] you as a nigger openly to your face and nothing being done about it is discriminatory, then I submit to you then, sir, that you might want to examine your own makeup."); *id.* at 138 ("It's not funny. It's not nothing to play about. I'm not going to ever allow you to use that type of language towards me."); *id.* at 140 (testifying that Thompson's language was "diminishing [Herring's] self-worth" and "making [Herring] feel inferior or making [Herring] feel somehow

compromised when [Herring] was working out there").[6] Herring testified that "when [Thompson] began to address [Herring] in that manner and refer to [him] as . . . an old nigger," Herring said: "Stop it. Don't use that type of language towards me. It's not okay." *Id.* at 177–78. Herring testified that Thompson "was unrelenting with it." *Id.* at 178. Herring also testified that even after he "no longer worked for [Thompson]," that Thompson "still came over there while I was working and still harassed me. He would make me leave what I was assigned to do, and I didn't have any recourse." *Id.* at 139. Construing this testimony in the light most favorable to Herring, I find sufficient evidence to raise a fact issue as to whether the harassment complained of affected a term, condition, or privilege of employment. The cases that Defendants cite in support of a contrary holding are all unavailing.

In support of its argument that Thompson's slurs did not affect Herring's employment, PeopleReady cites to *Mendoza v. Helicopter*, 548 F. App'x 127 (5th Cir. 2013), an unpublished and non-precedential opinion that is silent as to the race-based comments at issue. In *Mendoza*, the court found no hostile work environment where "the complained of conduct occurred sporadically over a several year period" and could "not accurately be described as pervasive." *Id.* at 129. PeopleReady also cites to *Anderson v. Sikorsky Support Servs.*, 66 F. Supp. 3d 863 (S.D. Tex. 2014), in which the court found no hostile work environment where plaintiff alleged being called "the 'N' word" one time by a co-worker in April 2011, while the other three quarters of the complained-of conduct was "not directed at Plaintiff." *Id.* at 874. Similarly, in *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370 (5th Cir. 2013)—a case cited by RES—the Fifth Circuit found that because the conduct at issue was not directed toward the plaintiff, there was no hostile work environment. *See id.* at 371–72. Here, Herring's testimony is

---

[6] PeopleReady points to Herring's deposition testimony that "unnamed minority co-workers . . . apparently did not consider ["nigger"] offensive." Dkt. 56 at 21. Thankfully, beyond this aside, neither Defendant seriously contests that "nigger" is both a subjectively and objectively offensive term. Needless to say, if they did, I would disagree with them.

admittedly silent as to the frequency of Thompson's conduct, but Herring's employment with Defendants lasted only a few months, and Herring has testified that that Thompson "was unrelenting," seeking Herring out even after Herring no longer worked for Thompson. This is certainly more pervasive than the nondescript, sporadic conduct discussed in *Mendoza*, the isolated single remark described in *Anderson*, or the secondhand harassment observed in *Frazier*.

In reading their motions for summary judgment, I fear that both defendants have conflated the fourth and fifth elements of a hostile work environment claim. Recall that the fourth element requires Herring to show that "the harassment affected a term, condition, or privilege of employment," while the fifth element requires Herring to show that "the employer knew or should have known about the harassment and failed to take prompt remedial action." *Wantou*, 23 F.4th at 433 (quotation omitted). For example, PeopleReady argues that "[Herring] does not allege that Mr. Avalos committed any act of harassment, let alone an act sufficient to impute an intent to discriminate on the basis of race." Dkt. 56 at 19. Similarly, RES argues that "Herring's conclusory allegations that [Gallardo] assigned him to the Motor Mount Crew for complaining about racial harassment are insufficient to establish a prima facie case of hostile work environment under Section 1981." Dkt. 58 at 18 (cleaned up). But Herring does not have to allege that Avalos discriminated against him or that Gallardo retaliated against him. Herring has testified that he was subjected to offensive, unrelenting, and humiliating harassment by Thompson—a PeopleReady employee working with Herring for RES at an RES work site—and that this conduct continued even after Herring told Thompson to stop. That testimony is sufficient to create a genuine dispute of material fact regarding whether *Thompson's conduct* affected a term or condition of Herring's employment. What Avalos or Gallardo did or did not do upon learning of Thompson's conduct speaks to the fifth element—Defendants' knowledge and subsequent action (or lack thereof).

**(b)** **There is a genuine issue of material fact concerning whether Defendants knew or should have known of Thompson's harassment and failed to take prompt remedial action (Element 5).**

> **(1)** *People Ready*

"An employer can be put on notice of harassment, and therefore be required to take remedial action, if a person within the organization who has the authority to address the harassment problem or an affirmative duty to report harassment learns of the harassment in question." *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022). By his own admission, Avalos was "PeopleReady's senior representative on the Wagyu Project" who had the responsibility to "investigate [a complaint involving protected rights] and document it with statements from the complaining employee and witnesses before referring the issue for action." Dkt. 57-1 at 3, 5. PeopleReady does not seriously contest that Herring's testimony—that he reported Thompson's harassment to Avalos—is sufficient to establish that PeopleReady knew or should have known of Thompson's harassment.[7] Rather, PeopleReady contends that "Herring cannot establish that PeopleReady failed to take prompt remedial action" because Herring "complained to PeopleReady, [then] complained to RES before PeopleReady had the opportunity to investigate the issue (resulting in alleged remedial action by RES), and never advised PeopleReady of an issue with the alleged corrective measures." Dkt. 56 at 22–23.

Tellingly, PeopleReady cites no case law for the proposition that where a temporary employee complains to one of his temporary employment service's on-site representatives, and then later to a foreman at the company to whose

---

[7] PeopleReady highlights that Herring "could not have raised complaints on the date specified" in his interrogatory responses. Dkt. 56 at 22 n.60. But Herring's response shows this date was only approximate. *See* Dkt. 57-5 at 5 ("Plaintiff conveyed to [Avalos] *on or about September 15, 2019* that [Thompson] was harassing and berating Plaintiff, and frequently directing racial epithets toward him and many of the black employees while at work." (emphasis added)). Herring's sworn testimony that he reported Thompson's harassment to Avalos—despite Avalos's affidavit to the contrary—creates a genuine dispute of a material fact.

worksite he has been assigned, that the subsequent complaint relieves the temporary employment service from investigating the employee's complaint or taking any further action. Even if *RES's* allegedly remedial action—saying nothing to Thompson and simply transferring Herring to a different crew where Thompson continued to contact Herring—was sufficient, I could hardly impute that action to PeopleReady. PeopleReady offers no evidence whatsoever that it did *anything* to investigate Herring's complaint, much less assess the efficacy of RES's allegedly remedial action. Of course, the reason PeopleReady offers no such evidence is because PeopleReady maintains that Herring never complained to Avalos, so PeopleReady was never on notice. But Herring and Avalos each offer conflicting testimony on this point. Accordingly, I find Herring's testimony sufficient to create a genuine dispute of material fact regarding whether PeopleReady knew or should have known of Thompson's harassment.[8]

### (2)   RES

Interestingly, RES disclaims both knowledge *and* failure to take prompt remedial action. RES does not dispute that Herring reported Thompson's harassment to Gallardo. Rather, RES contends that "foremen, including [Gallardo] are craft employees and are not considered RES management." Dkt. 58 at 20. Yet, RES next contends that because "[Gallardo] removed [Herring] from under [Thompson]'s supervision and placed him in the Motor Mount Crew to avoid an escalation in conflict . . . it is implausible to argue that RES failed to take proper remedial action." *Id.* at 21. RES cannot disclaim in one breath that Herring's report to Gallardo was insufficient to put RES on notice, and then, in the very next breath, claim that Gallardo's actions following Herring's report constituted prompt remedial action. If Gallardo had "authority to address the harassment problem," then Herring's report to Gallardo was sufficient to put RES on notice of the

---

[8] Because Herring's testimony is sufficient, on its own, to survive summary judgment on his § 1981 claim against PeopleReady, I do not reach PeopleReady's objections to the rest of Herring's evidence. *See* Dkt. 61 at 11–15. These objections can be revisited at trial.

harassment. *See Abbt*, 28 F.4th at 607 (quotation omitted). Moreover, whether Gallardo's "remedial" action was sufficient is a genuinely disputed material fact in light of Herring's testimony that even after Herring "no longer worked for [Thompson]," that "[Thompson] still harassed [Herring]" and "would make [Herring] leave what [Herring] was assigned to do." Dkt. 58-7 at 139. For this reason alone, I find Herring's testimony sufficient to establish a genuine dispute of material fact regarding whether RES knew or should have known of Thompson's harassment and failed to take prompt remedial action.[9] Alas, there are other disputed issues.

RES makes much ado of its contention that "Herring did not make any formal complaint to RES management about discrimination or take advantage of the resources made available to him by RES to report such discrimination, including reporting the alleged racial harassment via the confidential hotline provided by RES." Dkt. 58 at 20. In support, RES cites to "posters around [the] jobsite" attached to the affidavit of project manager Jeremy Teresinski ("Teresinski"). *Id.* nn.73–74. There are a couple of problems with these pieces of evidence. First, Herring has testified that "they didn't give us no 1-800 number to call about no racial discrimination." Dkt. 58-7 at 146. The conflict between this testimony and Teresinski's affidavit regarding the jobsite posters creates a disputed fact. Second, while it is true that the posters provide a confidential hotline to call, the posters also say: "Or speak to your line manager." Dkt. 58-6 at 1–4. Perhaps foremen and line managers are something different at RES, but in common parlance they are one in the same, and RES offers no evidence otherwise. Moreover, RES's own evidence suggests that Gallardo was a line manager with authority to make decisions like transferring personnel upon receiving complaints on discrimination. Thus, whether Gallardo was a line manager to whom Herring

---

[9] Because Herring's testimony (via his deposition and the portions of his affidavit to which RES's objections have been overruled) is sufficient, on its own, to survive summary judgment on his § 1981 claim against RES, I do not reach RES's objections to the rest of Herring's evidence. *See* Dkt. 64 at 10. These objections can be revisited at trial.

should have brought his complaints of harassment in accordance with RES policy is also a disputed fact. For all these reasons, Herring's § 1981 claim against RES should be resolved by the trier of fact.

## CONCLUSION

For the reasons discussed above, I issue the following orders:

- Herring's motion to strike (Dkt. 60) is **GRANTED**;

- RES's motion to strike the declaration of Jaylon Tolbert (Dkt. 64) is **GRANTED**;

- Herring's request to supplant Tolbert's declaration (Dkt. 67) is **DENIED**;

- Herring's request to amend his response to PeopleReady's motion for summary judgment (Dkt. 70) is **GRANTED**; and

- Defendants' motions to strike Herring's sur-replies (Dkts. 72–73) are **DENIED**.

Finally, I recommend that PeopleReady's motion for summary judgment (Dkt. 56) and RES's motion for summary judgment (Dkt. 58) be **GRANTED** as to Plaintiffs' negligence and gross negligence claims, but **DENIED** as to Herring's § 1981 claim.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 11th day of July 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE